<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHAKEEMA STOCKLING,<br><br>*Plaintiff,*<br><br>v.<br><br>EVICORE HEALTHCARE MSI, LLC (d/b/a The Cigna Group) and CARISSA GARRISON,<br><br>*Defendants.* | Civil Action No. 23-21855<br><br>**OPINION**<br><br>**July 15, 2024** |

**SEMPER,** District Judge.

In this matter, Plaintiff Shakeema Stockling ("Plaintiff") asserts claims against Defendant Evicore Healthcare MSI, LLC d/b/a The Cigna Group ("Cigna") and Defendant Carissa Garrison ("Garrison") (collectively "Defendants") under the New Jersey Law Against Discrimination ("NJLAD"). Before the Court is Defendants' motion to dismiss the Complaint and compel arbitration pursuant to Federal Rule of Civil Procedure 12(b)(6), based on the alleged Voluntary Arbitration Agreement (ECF 9-4, "VAA") with Plaintiff. (ECF 9, "Defs. Br.") Plaintiff filed a brief in opposition to Defendants' motion. (ECF 12, "Pl. Br.") Defendants filed a reply in further support of their Motion. (ECF 14, "Reply.") The Court reviewed the Complaint, the VAA, and the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below, Defendants' motion to compel arbitration is **GRANTED.**

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a former employee of Cigna's subsidiary eviCore, where she was employed remotely as a Utilization Review Nurse from October 2022 through June 1, 2023. (ECF 7, Compl. ¶¶ 4, 6; ECF 12, Pl. Br. at 2-3.) Initially, Plaintiff's job was to analyze medical charts. (ECF 7, Compl. ¶ 5.) In January 2023, however, Defendant Cigna expanded Plaintiff's position to include speaking with doctors and patients via telephone. (*Id.* ¶ 8.) In response, Plaintiff produced a disability accommodation form informing Cigna that Plaintiff's hearing loss prevented her from answering telephone calls. (*Id.* ¶¶ 11-12.) Ultimately, Cigna proposed the use of a teletypewriter ("TTY") phone; however, Cigna subsequently informed Plaintiff that a TTY adaptive phone was not a reasonable accommodation through a "Revised ADA Request Response" on February 7, 2023. (*Id.* ¶ 18.) Cigna then placed Plaintiff on unpaid leave through March 8, 2023, advised Plaintiff to seek "continuous short-term disability" on March 10 while maintaining unpaid leave, informed Plaintiff on April 20 that Cigna would begin to fill her position, and ultimately terminated Plaintiff on June 1. (*Id.* ¶¶ 19-22.)

On October 4, 2023, Plaintiff filed suit in the Superior Court of New Jersey, Union County, alleging that Defendants violated the NJLAD by discriminating against Plaintiff on the basis of her disability. (*See generally* ECF 7, Compl.) Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, and costs of suit. (*Id.* ¶ 55.) In lieu of an answer, Defendants properly removed the matter to this Court on November 3, 2023. (ECF 3.) Thereafter, Defendants filed the instant motion on November 24, 2023.

II. **STANDARD OF REVIEW**

A court will consider a motion to compel arbitration under 12(b)(6) if "the affirmative defense of arbitrability of claims is apparent on the face of the complaint (or . . . documents relied

on in the complaint)." *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 765, 773 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 481 (E.D. Pa. 2011)); *see also In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (considering only documents that form the basis of plaintiff's complaint).

Conversely, a court will apply the summary judgment standard when the complaint does not contain the "requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement." *Guidotti*, 716 F.3d at 774 (internal quotations and citations omitted). Summary judgment is granted "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] "To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party, not "evidence [that] is merely 'colorable' or is 'not significantly probative.'" *Matczak v. Compass Grp. USA, Inc.*, No. 21-20415, 2022 U.S. Dist. LEXIS 32408, at *5 (D.N.J. Feb. 24, 2022) (quoting *Anderson*, 477 U.S. at 250). In deciding a motion for summary judgment, a "court must draw all inferences in favor of the non-moving party's evidence." *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)).

### A. Application

As a threshold matter, this Court must first determine if Defendants' motion is properly brought as a motion to dismiss for a failure to state a claim under Rule 12(b)(6) or a motion for

---

[1] "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

3

summary judgement under Rule 56. *See Guidotti*, 716 F.3d at 771-72 (discussing the split application of Rule 12(b)(6) and Rule 56 standards of review for motions to compel arbitration in the Third Circuit). *Compare Sandford v. Bracewell & Guiliani, LLP*, 618 Fed. Appx. 114, 117-18 (3d Cir. 2015) (applying Rule 12(b)(6) standard to defendant's motion to compel arbitration because arbitrability was apparent from the face of plaintiff's complaint), *with Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009) (applying Rule 56 standard to defendant's motion to compel arbitration).

The instant motion must be judged in accordance with Rule 56, rather than Defendants' requested application of Rule 12(b)(6), because Plaintiff's complaint and supporting documents do not establish an express and unequivocal agreement to arbitrate. Plaintiff's complaint is not predicated on the alleged arbitration agreement between parties, instead turning on potential violations of NJLAD, so arbitration cannot be established on the face of the complaint or through supporting documents. *See Raposa v. Volkswagen Grp. of Am., Inc.*, No. 22-5896, 2024 U.S. Dist. LEXIS 48082, at *28 (D.N.J. March 19, 2024) (denying motion to compel arbitration under Rule 12(b)(6) because the complaint turned on defendant's possible violation of state and federal law, not on an alleged arbitration agreement). As a result, this Court will go beyond the face of the complaint to evaluate arbitrability under the summary judgment standard of review.

### III.   DISCUSSION

Defendants ask this Court to dismiss Plaintiff's action because the VAA's delegation clause mandates that the threshold issue of arbitrability be decided by an arbitrator, not by the court. (ECF 9-2, Def. Br. at 14.) However, this Court retains the ultimate authority to determine arbitrability unless "the parties clearly and unmistakably provide otherwise." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 648 (1986); *see also Morgan v. Sandord Brown Inst.*,

137 A.3d 1168, 1177 (N.J. 2016) ("the law presumes that a court, not an arbitrator, decides any issue concerning arbitrability"). The language of the delegation clause of the VAA does not indicate a "clear and unmistakable" intent to divert threshold issues of arbitrability to an arbitrator, and is directly disputed by Plaintiff, so judicial determination is required. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010) (requiring judicial determination of arbitrability when an agreement's "enforceability or applicability to the dispute is in issue.").

Turning to the VAA itself, "[b]efore compelling a party to arbitrate pursuant to the [Federal Arbitration Act], a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyds, London*, 584 F.3d 513, 523 (3d Cir. 2009) (citing *Kirkleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156 (3rd Cir. 2009)). "Courts generally apply a presumption in favor of enforcing arbitration clauses." *Griswold v. Coventry First LLC*, 76 F.3d 264, 271 (3d Cir. 2014) (citations omitted). This Court may grant Defendants' instant motion under Rule 56 if there is an "express, unequivocal agreement" to arbitrate, and if there is no genuine dispute of material fact as to the existence of the agreement or its scope. *Guidotti*, 716 F.3d at 773 (citation omitted); *see also Matczak*, 2022 LEXIS 32408 at *13-14 (utilizing summary judgment standard to grant defendant's motion to compel arbitration on plaintiff's NJLAD claim).

This Court will consider, in turn, whether there was an agreement to arbitrate assented to by both Plaintiff and Defendants, and if NJLAD falls within the scope of that arbitration agreement.

### A. Agreement

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" *Pandya v. LTI Mindtree*, No. 23-

04094, 2024 U.S. Dist. LEXIS 51181, at *5, n.3 (citing *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 312-313 (2014) (citation omitted)). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." *Atalese*, 99 A.3d at 313 (quoting *Knorr v. Smeal*, 836 A.2d 794, 798 (N.J. 2002)). "Courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent" in circumstances involving arbitration. *Atalese*, 99 A.3d at 313 (quoting *NAACP of Camden Cnty. E. v. Foulke Mgmt.*, 24 A.3d 777, 790-91 (N.J. Super. Ct. App. Div. 2011)). Plaintiff argues that her "waiver of statutory rights was unknowing and involuntary, rendering the Arbitration Agreement invalid." (ECF 12, Pl. Br. at 10.) However, the relevant evidence shows that Plaintiff and Defendant mutually assented to the VAA as a condition of employment with Cigna, and the arguments made by Plaintiff otherwise fail to raise any genuine dispute of material fact.

First, Plaintiff attempts to create a factual dispute over the authenticity of her DocuSign signature on the VAA, because her offer letter and arbitration agreement have identical serial numbers and timestamps. (*Id*. at 11-12.) In some cases, disputes over the authenticity or existence of specific electronic signatures have required further discovery. *See Guidotti*, 719 F.2d at 780 (requiring further discovery because the DocuSign signature header was not present on account agreement between parties).[2] However, the instant case differs in that Defendants provide clear evidence that Plaintiff had to individually review and sign each document in the DocuSign envelope before accepting the position and proceeding to further onboarding tasks. (*See* ECF 15, Wineburgh Decl. ¶ 13; ECF 15-1, Ex. A; ECF 15-2, Ex. B; ECF 15-3, Ex. C.; ECF 15-4, Ex. D.) Considering Plaintiff had to select and sign each document, including the VAA, Plaintiff's bald

---

[2] It should be noted that electronic signatures carry the same binding legal effect as a written signature. N.J. Stat. Ann. § 12A:12-7.

assertion that the electronic signature was duplicated onto the arbitration agreement or even falsified does not raise any genuine dispute of material fact.

Next, the content of the VAA and offer letter, combined with Plaintiff's clear acceptance of the documents through her DocuSign signature, refute Plaintiff's claims that she was unaware of signing the VAA. Plaintiff argues subjectively that she does not remember signing the VAA and thereby did not assent to the terms within. However, intent to be bound by an agreement must be determined objectively from the language of the contractual agreement itself. *See HSM Constr. Servs. v. MDC Sys.*, 239 Fed. App'x 748, 751 (3d Cir. 2007) ("The parties objective manifestations control in deciding whether they formed a contract by mutual assent."); *Ranieri v. Santander*, No. 15-3740, 2017 U.S. Dist. LEXIS 10221, at *12 (D.N.J. Jan. 25, 2017) (compelling arbitration based solely on express evidence and objective manifestations of the parties' intent to contract). Plaintiff's DocuSign signature on the VAA is objective proof that Plaintiff did sign the agreement. (ECF 15, Wineburgh Decl. ¶ 13.) Any failure by Plaintiff to actually review the content of the agreement before signing is irrelevant to determining mutual assent. (*See* ECF 14, Reply at 8 ("'one who does not choose to read a contract before signing it cannot later relieve himself of its burden.'" (quoting *Skuse v. Pfizer, Inc.* 236 A.3d 939, 952 (N.J. 2020) (citations omitted)))).

Plaintiff then claims that she did not understand what arbitration is or that it stands in place of litigation. However, the VAA sufficiently identifies the difference between arbitration and litigation as to put Plaintiff on notice of the waiver of her right to sue in a court of law for the claims addressed by the VAA:

> This agreement is intended to apply to the resolution of disputes that *otherwise would be resolved in a court of law* or before a forum other than arbitration. Except as otherwise stated in this Agreement, you and Cigna agree that any legal dispute or controversy covered by this agreement, or arising out of, relating to, or concerning the scope, validity, enforceability or breach this Agreement, shall be resolved by *final and binding arbitration* in accordance with the Employment

7

>Arbitration Rules of the American Arbitration Association ("AAA Rules") then in effect, and *not by court or jury trial*.

(ECF 9-4, Exhibit A, VAA at 1 (emphasis added).) The VAA clearly informs the signee that the arbitration process stands in place of suing in a court of law, comparable to language found in other acceptable arbitration agreements. *See Skuse*, 236 A.3d at 939 (compelling arbitration based on an agreement stating that employees claims "will be resolved by arbitration and NOT by a court or jury"); *Ebner v. Fin. Architects, Inc.*, 763 F. Supp. 2d 697, 699 (D. Del. 2011) (compelling arbitration based on an agreement stating that "arbitration shall be final and binding, and that by agreeing to arbitration both ADVISER and CLIENT are waiving their respective rights to seek remedies in court, including the right to a jury trial."). Plaintiff argues that specific wording in *Skuse* like "rather" and "instead" is required to show "clearly and unambiguously" that the signee agrees to arbitrate instead of pursuing a jury trial. However, there is no specific language required in an arbitration agreement to differentiate between arbitration and litigation, and this Court finds that the wording contained in the VAA is sufficient. *Atalese*, 99 A.3d at 316 ("no prescribed set of words must be included in an arbitration clause to accomplish a waiver of rights.").

### B. Scope

Two considerations should be made when determining if statutory claims fall within the scope of an arbitration agreement in New Jersey.[3] First, the clause must "identify the general substantive area that the arbitration clause covers." *Moon v. Breathless, Inc.*, 868 F.3d 209, 214 (3d Cir. 2017). The arbitration agreement "should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination." *Id.* (quoting *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 73 A.2d 665, 672 (N.J.

---

[3] This is a segment of a three-part test derived from *Moon*. The third element considers whether the arbitration agreement sufficiently delineates between arbitration and litigation, which has been moved to the "agreement" section of this discussion for organizational purposes.

2001)). Second, the clause must "reference the types of claims waived by the provision" as to inform the signee of the type of disputes contained within the scope of the arbitration agreement. *Moon*, 868 F.3d at 214. Such a clause does not, however, have to list the specific statutory rights subject to arbitration. *See id.* ("We do not suggest that the arbitration clause has to identify the specific constitutional or statutory right guaranteeing a citizen access to the courts that is waived by agreeing to arbitration." (quoting *Atalese*, 99 A.3d 315)). As a general matter, NJLAD claims can be subject to arbitration. *See Triola v. Dolgencorp, LLC*, No. 22-840, 2022 U.S. Dist. LEXIS 204085, at *15 (D.N.J. Nov. 9 2022) (compelling arbitration against Plaintiff's NJLAD claim); *Antonucci v. Curvature Newco, Inc.*, 270 A.3d 1088, 1096-97 (N.J. Super. Ct. App. Div. 2022) (compelling arbitration after finding that the FAA preempted NJLAD).

Plaintiff's claims under NJLAD fall well within the scope of the VAA. The language of the VAA clearly encompasses discrimination claims related to termination and the employment relationship and refers to the specific waiver of statutory rights:

> this Agreement applies to *any dispute*, past, present or future related to Employee's employment or relationship with Cigna . . . *or termination of employment* regardless of its date of accrues and survives after the employment relationship terminates.

(ECF 9-4, Exhibit A, VAA ¶ 1 (emphasis added).)

> Except as it otherwise provides, this agreement also applies, without limitation to disputes with any entity or individual arising out of or related to . . . the Americans With Disabilities Act [and] *state or local statutes* or regulations addressing the same or similar subject matters or the termination of employment*.

(ECF 9-2, Def. Br. At 20 (citing ECF 9-4, Exhibit A, VAA ¶ 2) (emphasis added).) Unlike circumstances where arbitration has not attached to statutory claims, the VAA does not make any limiting reference to the type of conduct covered by the arbitration, and "state or local statutes or regulations" clearly includes the New Jersey discrimination statute, bringing NJLAD within the scope of arbitration. *Compare Neith v. Esquared Hospitality LLC*, No. 19-13545, 2020 U.S. Dist.

9

LEXIS 10096, at *22 (D.N.J. Jan. 16, 2020) (finding that the language of the agreement subjecting "all federal, state and local laws, regulations, common law claims" to arbitration encompassed NJLAD claims), *and Sandhu v. Hammon Corp.*, No. 18-1306, 2019 U.S. Dist. LEXIS 157115, at *5 (D.N.J. Sept. 12, 2019) (compelling arbitration because plaintiff's NJLAD claim fell within the scope of parties arbitration agreement), *with Garfinkel*, 773 A.2d at 672 (excluding NJLAD from parties' arbitration agreement because the agreement failed to generally reference statutory claims rights covered by the agreement).

### IV.   CONCLUSION

For the reasons stated above, Defendants' motion to compel arbitration is **GRANTED**. This Court will stay the current action pending arbitration. *See Smith v. Lindemann*, No. 10-33119, 2014 U.S. Dist. LEXIS 27605, at *35 (N.D. Cal. Feb. 20, 2014) (staying judicial proceedings and compelling arbitration on plaintiff's claims); *Seus v. John Nuveen & Co.*, 146 F.3d 175, 179 (3d Cir. 1998) ("If a party to a binding arbitration agreement is sued in a federal court on a claim that the plaintiff has agreed to arbitrate, it is entitled under the FAA to a stay of the court proceeding pending arbitration and to an order compelling arbitration" (citing 9 U.S.C. §§ 3-4)). An appropriate Order follows.

> */s/ Jamel K. Semper*
> **HON. JAMEL K. SEMPER**
> **United States District Judge**

Orig:  Clerk
cc:    Leda D. Wettre, U.S.M.J.
       Parties